**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TERESA BEYER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:20-cv-1721 |
| | ) | |
| NAPLETON MOTOR CORP.; | ) | |
| MIDLAND STATES BANK; and | ) | |
| NORTHWEST BANK, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

1.      Plaintiff Teresa Beyer brings this action to secure redress for fraudulent conduct in connection with the sale of a used Jeep, as a result of which she paid or is obligated to pay over $50,000 for essentially nothing.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction under 15 U.S.C. §1640 (Truth in Lending Act), 15 U.S.C. §2610 (Magnuson Moss Act), and 28 U.S.C. §§1331, 1337 and 1367. The amount in controversy, exclusive of interest and costs, exceeds $50,000 (Magnuson Moss amount in controversy).

3.      Venue in this District is proper because all Defendants do business here.

## PARTIES

4.      Plaintiff Teresa Beyer is a resident of Machesney Park, Illinois.

5.      Defendant Napleton Motor Corp. is an Illinois corporation that operates a car dealership at  505 N. Perryville Rd., Rockford, IL 61107.  Its registered agent and office is James

Roche, 920 N. York Road, Suite 210, Hinsdale, IL 60521.

6.      Defendant Napleton Motor Corp., sells more than 26 vehicles per year on time,

and is thus a creditor as defined in the Truth in Lending Act, 15 U.S.C. 1601 et seq. ("TILA")

and Regulation Z, 12 C.F.R. part 1026.

7.      Defendant Midland States Bank is a corporation with principal offices at 110 S.

5th Street, Effingham, IL 62401.

8.      Defendant Northwest Bank is a corporation with offices at 3106 N. Rockton

Ave., Rockford, IL 61103.

## FACTS

9.      On September 19, 2018, Plaintiff purchased a used 2017 Jeep Wrangler vehicle

(the "Vehicle") from Defendant Napleton Motor Corp. with 8,399 miles on it for $50,650 as the

Selling Price as Equipped.  With fees added, the total purchase price was $50,974.81.

10.     The Vehicle was purchased for personal, family or household purposes and not

for business purposes, and is of a type normally used for personal, family or household purposes.

11.     Plaintiff put down $12,600 cash, traded in a Cadillac and signed a retail

installment contract.

12.     The Napleton Motor Corp. dealer in Rockford was a Cadillac dealer.  The 2017

Vehicle had allegedly been taken in trade for a Cadillac.  Plaintiff later learned that the Vehicle

had been shipped to the Rockford dealer from a Napleton location in Calumet City, Illinois.

13.     A 2017 Jeep normally has a factory warranty of 36 months / 36,000 miles, with

additional coverage on the drivetrain and against corrosion.

14.     Plaintiff dealt with the following agents of Defendant Napleton Motor Corp. :

a.      Salesman Ken Baylor;

b.      Finance manager Charles Madison;

c.      Used car manager Gary Judd.

d.      General manager Geoff Feinberg.

15.      In connection with the purchase, Plaintiff signed or received:

a.      A purchase order (Appendix A).  This document stated that "The factory warranty constitutes all of the warranties with respect to the sale of this item/ items."  It also purported to disclaim all implied warranties, even though the statutory warranty of merchantability (815 ILCS 505/2L) was extended and cannot be disclaimed;

b.      A retail installment contract (Appendix B);

c.      A service contract (Appendix C); and

d.      An extended warranty brochure (Appendix D).

16.      Plaintiff was told prior to purchase that the factory warranty was in effect by salesman Ken Baylor and used car manager Gary Judd.

17.      Plaintiff was charged for a tire warranty, which she did not receive.  She cancelled it and was sent a check for $1,400.

18.      In fact, the factory warranty and service contract were both invalid or inapplicable to model parts of the Vehicle because the Vehicle had been modified.

19.      The retail installment contract (Appendix B) included a rider which:

a.      Contained the Illinois statutory used car warranty (815 ILCS 505/2L).

b.      Provided that if a service contract was issued, "the buyer agrees to return

-3-

the applicable automobile to the selling store if a breakdown or repair

occurs within 60 days of the purchase date and if within a 100 mile radius

of a Napleton Auto Group location," so that Defendant Napleton Motor

Corp. could perform the repairs itself, thus undertaking to provide

coverage under the terms of the service contract.

20.     Warranty and service contract coverage was a material inducement to Plaintiff's

purchase of the Vehicle.  Plaintiff would not have purchased the Vehicle without such

protection.

21.     Appendix B was assigned by Defendant Napleton Motor Corp. to Midland

States Bank.

22.     In October 2018, Plaintiff noticed that the Vehicle's Anti-lock Braking System

(ABS) and Traction Control lights turned on when the Vehicle traveled 35 mph or faster.  At

Defendant Napleton Motor Corp.'s instructions, Plaintiff took the Vehicle to Anderson Jeep.

(Appendix E)

23.     Plaintiff was informed by Anderson Jeep that the Vehicle was not covered, under

either the service contract or the manufacturer's warranty, because it had been modified.

24.     Defendant Napleton Motor Corp. reimbursed Plaintiff for the repairs, stating that

the reason that Plaintiff didn't have service contract coverage was because it takes 60 days for

the contract to go into effect.

25.     This was false.  In fact, the service contract would not be honored because the

Vehicle had been modified.

26.     Plaintiff stored the Vehicle between November 2018 and March 2019.

-4-

27.     On March 24, 2019, after Plaintiff resumed use of the Vehicle, it experienced severe malfunctions.  Defendant Napleton Motor Corp. had Plaintiff again bring the Vehicle to Anderson Jeep.  Anderson found that the rear differential was not working and would cost over $3,000 to repair. (Appendix F)  Plaintiff was told that neither the factory warranty nor the service contract covered the problem.

28.     Plaintiff complained to Defendant Napleton Motor Corp. about the $3,000. Defendant Napleton Motor Corp.'s General Manager Geoff Feinblatt offered to have Anderson Jeep reduce the bill by $500, Defendant Napleton Motor Corp. pay $1,000, and Plaintiff pay the balance of $1,600.

29.     Plaintiff did not have $1,600.

30.     Plaintiff asked to undo the deal and return the Vehicle.

31.     Defendant Napleton Motor Corp. refused.

32.     Defendant Napleton Motor Corp. then stated that it would refinance the Vehicle, cancel the extended warranty, and use $1,600 refunded by the warranty issuer to pay the $1,600 repair bill.  Defendant Napleton Motor Corp. reiterated that the factory warranty was still in effect.

33.     A new retail installment contract was prepared by Defendant Napleton Motor Corp. and signed by Plaintiff (Appendix G).

34.     Appendix G purports to treat the Vehicle as being both traded in and again purchased, with a $5,229.00 cash down payment, a trade-in of $50,000, a "lien payoff" of $1,600, and a total sale price of $62,830.25.

35.     In fact, the Vehicle was not transferred to anyone.

36.     A retail installment contract is not an appropriate means of documenting or disclosing the refinancing of an existing obligation.

37.     The numbers for the down payment, cash price, and total sale price were totally fictitious, there being no "credit sale."

38.     In addition, Plaintiff was charged for a new documentary fee, an ERT fee, a new title, and a new Guaranteed Auto Protection (GAP) contract.

39.     On information and belief, Defendant Napleton Motor Corp. received rebates of amounts paid under Appendix B for various contracts and did not fully credit or refund them to Plaintiff, along with commission on the new GAP contract..

40.     On information and belief, Appendix G includes, in the amount financed, items which are in fact finance charges.

41.     Appendix G was assigned by Defendant Napleton Motor Corp. to Defendant Northwest Bank.

42.     Anderson Jeep repaired the Vehicle, which was returned to Plaintiff about June 2019.

43.     The Vehicle did not operate correctly, hesitating at about 25 mph.

44.     Plaintiff took the Vehicle to Jack Wolfe in Belvidere, Illinois, and was informed that the transmission needed to be replaced, at a cost of another $3,000, and that no factory warranty or service contract would have covered this because of the modification. (Appendix H)

46.     Additionally, the Vehicle is experiencing electrical issues which cause the lights inside the Vehicle to flicker while it is in motion.

47.     Plaintiff has been unable to use the Vehicle.

48. Plaintiff made payments to Defendant Midwest States Bank prior to the "refinancing" and to Defendant Northwest Bank after the "refinancing."

49. The Vehicle has minimal value. (Appendix I)

50. Plaintiff has been damaged an amount in excess of $50,000.

## COUNT I – TRUTH IN LENDING ACT

51. Plaintiff incorporates paragraphs 1-50.

52. This claim is against Napleton Motor Corp.

53. The finance charges and annual percentage rate on Appendix G are understated.

54. Other items, such as the "cash price," are fictitious.

55. Napleton Motor Corp. thereby violated 15 U.S.C. §1638 and 12 C.F.R. §1026.18.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and against Napleton Motor Corp. for:

        i. Statutory damages;

        ii. Actual damages;

        iii. Attorney's fees, litigation expenses and costs of suit; and

        iv. Such other or further relief as is proper.

## COUNT II -- BREACH OF EXPRESS WARRANTY

56. Plaintiff incorporates paragraphs 1-50.

57. This claim is against Napleton Motor Corp., Midland States Bank and Northwest Bank.

58. Napleton Motor Corp. made the following representations, each of which

constitutes an express warranty:

      a.    That there was a factory warranty on the Vehicle; and

      b.    That Plaintiff would have a valid service contract covering the Vehicle.

59.    These statements created an express warranty under 810 ILCS 5/2-313.

60.    These statements were false.

61.    Midwest States Bank and Northwest Bank are subject to claims and defenses which Plaintiff has against Napleton Motor Corp.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and against Defendants for:

      a.    Revocation of acceptance and cancellation of all financial obligations;

      b.    Damages;

      c.    Costs; and

      d.    Such other relief as may be proper.

## COUNT III -- BREACH OF IMPLIED WARRANTY

62.    Plaintiff incorporates paragraphs 1-50.

63.    This claim is against Napleton Motor Corp., Midland States Bank and Northwest Bank.

64.    The Vehicle, when sold by Napleton Motor Corp., was defective and unmerchantable, breaching the implied warranty of merchantability (810 ILCS 5/2-314).

65.    Midwest States Bank and Northwest Bank are subject to claims and defenses which Plaintiff has against Napleton Motor Corp.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and against

-8-

Defendants for:

      a.      Revocation of acceptance and cancellation of all financial obligations;

      b.      Damages;

      c.      Attorney's fees, litigation expenses and costs (15 U.S.C. 2310(d)); and

      d.      Such other relief as may be proper.

## COUNT IV -- CONSUMER FRAUD ACT

66.      Plaintiff incorporates paragraphs 1-50.

67.      This claim is against Napleton Motor Corp., Midland States Bank and Northwest Bank.

68.      Napleton Motor Corp.'s false statements and unorthodox actions to circumvent the lack of factory warranty and service contract coverage indicates Napleton Motor Corp. knew that the Vehicle was not covered by a factory warranty or service contract.

69.      Napleton Motor Corp. intentionally misrepresented that the Vehicle was covered by a factory warranty and service contract so that Plaintiff would rely on this misrepresentation.

70.      Plaintiff did rely on the representations in purchasing the Vehicle.

71.      Napleton Motor Corp. thereby engaged in unfair and deceptive acts, in violation of 815 ILCS 505/2.

72.      Midwest States Bank and Northwest Bank are subject to claims and defenses which Plaintiff has against Napleton Motor Corp.

73.      Napleton Motor Corp. engaged in a deceptive "refinancing" transaction instead of rescinding the purchase.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and against

Defendants for:

    i.  Revocation of acceptance and cancellation of all financial

       obligations;

    ii.  Compensatory and punitive damages;

    iii.  Attorney's fees, litigation expenses and costs of suit; and

    iv.  Such other relief as may be proper.

**COUNT V  --  COMMON LAW FRAUD**

74. Plaintiff incorporates  paragraphs 1-50.

75. This claim is against all Napleton Motor Corp., Midland States Bank and Northwest Bank.

76. The elements of common law fraud are "(1) [a] false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance on the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Miller v. William Chevrolet/GEO, Inc.*, 326 Ill. App. 3d 642, 648 (1st Dist. 2001).

77. Napleton Motor Corp.'s false statements and unorthodox actions to circumvent the lack of factory warranty and service contract coverage indicates Napleton Motor Corp. knew that the Vehicle was not covered by a factory warranty or service contract.

78. Napleton Motor Corp. intentionally misrepresented that the Vehicle was covered by a factory warranty and service contract so that Plaintiff would rely on this misrepresentation.

79. Plaintiff did rely on the representations in purchasing the Vehicle.

80. Napleton Motor Corp. thereby engaged in fraud.

81.     Midwest States Bank and Northwest Bank are subject to claims and defenses which Plaintiff has against Napleton Motor Corp.

82.     Napleton Motor Corp. engaged in a deceptive "refinancing" transaction instead of rescinding the purchase.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and against Defendants for:

    i.      Revocation of acceptance and cancellation of all financial obligations;

    ii.     Compensatory and punitive damages;

    iii.    Attorney's fees, litigation expenses and costs of suit; and

    iv.     Such other relief as may be proper.


                            */s/ Daniel A. Edelman*
                             Daniel A. Edelman


Daniel A. Edelman
Cathleen M. Combs
Daniel S. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

-11-

## **JURY DEMAND**

Plaintiff demands trial by jury.

<u>*/s/ Daniel A. Edelman*</u>
Daniel A. Edelman

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.   All rights relating to attorney's fees have been assigned to counsel.


*/s/ Daniel A. Edelman*
Daniel A. Edelman


Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
        & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

-13-